UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                          Case No. 3:26-mj-1-HTC

MARKEAS C. JONES,

     Defendant.
_____/

<u>ORDER</u>

Defendant Markeas Jones has filed a motion in limine challenging the admissibility of fourteen screenshots of listings on Facebook Marketplace. Doc. 22. The Government responded in opposition. Doc. 30. After considering the parties' submissions and the relevant law, the motion in limine is DENIED.

## I.    Background

Defendant is charged in a one-count information with stealing exercise equipment with a value less than $1,000 from the Family Fitness Center ("FFC") on Naval Air Station ("NAS") Pensacola between April 1, 2023, and June 30, 2023. Doc. 1. The Government intends to introduce fourteen screenshots of listings from Facebook Marketplace at Defendant's trial. The listings are for five different pieces of exercise equipment. The Government describes the origin of the screenshots and the investigation into Defendant as follows.

On August 19, 2025, an anonymous individual submitted a complaint to the FFC, alleging an employee was stealing equipment from the FFC and selling it on Facebook Marketplace.  The complaint also alleged the employee was the son of a director at the FFC.  The complaint was relayed to Master-at-Arms, Petty Officer First Class Remington Kirchheiner, who began an investigation.

Kirchheiner began looking for exercise equipment that was for sale on Facebook Marketplace in the Pensacola area.  Kirchheiner found an account named "Abbi-Keys" selling a squat rack, cable machine, weight plates, a rowing machine, and an elliptical machine.  Kirchheiner noted: (1) the equipment listed for sale was the kind of equipment used at gyms on NAS Pensacola; (2) the backgrounds of some of the photos of the equipment included with the listings matched the FFC; (3) the photo of the cable machine showed it had a sticker on it with the word "Wenzel," which is the name of another gym on NAS Pensacola that is across the street from the FFC; (4) the description section of the listing for the squat rack stated "must pick up near base"; and (5) the description section of the listing for the weight plates stated "selling for my husband."

Kirchheiner showed the Facebook Marketplace listings to Deborah Brockway, the leading MWR[1] director on NAS Pensacola, and she stated she

---

[1] MWR stands for Morale, Welfare, and Recreation.  It is a military program that, among other things, manages fitness centers on military installations.

believed Abbigal-Keys Jones is the wife of Defendant, an MWR employee and son of another MWR director.   Brockway reviewed MWR employee records and confirmed Abbigal-Keys Jones is Defendant's wife.

Based on the foregoing, Kirchheiner suspected Defendant was stealing equipment from NAS Pensacola and selling it on Facebook Marketplace. Kirchheiner placed Defendant under military apprehension.   After waiving his *Miranda* rights, Defendant gave a verbal and written statement to Kirchheiner. Defendant verbally confessed to taking exercise equipment from the former "NOFF Zone"[2] at the FFC and selling it on Facebook Marketplace, but stated his supervisor, Robin Morrissey, gave him permission to do so.  In his written statement, Defendant admitted he took a squat rack, a cable machine, and weight plates, and indirectly conceded to taking a rowing machine by discussing the Facebook Marketplace listing for it.  Defendant agreed to return the unsold cable machine; when Navy personnel recovered the cable machine, the serial numbers on it matched the serial numbers in the MWR's asset registry, indicating it belonged to the Government.

After his interview with Kirchheiner, Defendant emailed Brockway and stated he took exercise equipment from the FFC and sold it, but Morrissey had given him permission to do so.  When Kirchheiner returned to Facebook Marketplace to record

---

[2] NOFF stands for Navy Operational Fitness and Fueling System.  It refers to a specific training zone within a military fitness center.  At the FFC, it was located outside in a courtyard.

the listings with the name of the account holder included, he discovered the listings had been deleted.

Detective Ernesto Figueroa took over the investigation from Kirchheiner when Kirchheiner changed duty stations. Figueroa took photos of the former NOFF Zone at the FFC. These photos show objects that also appear in the backgrounds of some of the photos from the Facebook Marketplace listings.

## II.    Discussion

Defendant argues Kirchheiner's screenshots of the Facebook Marketplace listings should be excluded from trial because: (1) they cannot be properly authenticated; (2) they are inadmissible hearsay; and (3) they are not relevant. The Court, however, disagrees on all three points.

### A.    Authentication

"Before an item of evidence may be admitted, Federal Rule of Evidence 901(a) requires it to be authenticated with evidence 'sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (quoting Fed. R. Evid. 901(a)); *see also United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) (authentication of a document is "a condition precedent to its admissibility"). "Proper authentication requires only that the proponent of the evidence make out a *prima facie* case that the proffered evidence is what it purports to be." *Broomfield*, 591 F. App'x at 851. "Once that

Case No. 3:26-mj-1-HTC

*prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010).

A party only needs to present some competent evidence to support authentication, and that evidence can be purely circumstantial. *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). Evidence may be authenticated by, among other things, "testimony that an item is what it is claimed to be" or "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b).

Defendant argues the screenshots cannot be authenticated because they do not identify who created the listings or when they were created, and the Government has not otherwise provided any additional information regarding the listings. Defendant faults the Government for not interviewing his wife to determine whether the "Abbi-Keys" account belongs to her or whether she created the listings, and for not taking any other investigate steps to confirm the account belongs her, such as by issuing a subpoena to Facebook.

However, this argument misunderstands what is required for authentication and overlooks the evidence the Government intends to present for authentication. The Government may authenticate the screenshots through circumstantial evidence; it is not required to obtain testimony from the person who created the listings. *See*

*United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985) (noting testimony from someone present at the time of document's creation is not necessary for authentication and document may be authenticated by circumstantial evidence); *see also Smith*, 918 F.2d at 1510 (concluding ledgers were properly authenticated when the ledgers' characteristics and the circumstances around their discovery confirmed "the author or authors of the ledgers were intimately involved in the operation of the narcotics conspiracy at issue" and noting "the specific identity of the author is not necessary").

The Government represents Kirchheiner will testify: (1) he accessed Facebook Marketplace, searched for gym equipment for sale in the Pensacola area, and found the listings depicted in the Government's exhibits posted by the account "Abbi-Keys"; (2) he recognized the photos of the equipment in the listings as the types of equipment used at the FFC; (3) he recognized distinctive features in the backgrounds of some of the photos in the listings as coming from the NOFF zone at the FFC, as he conducted routine security patrols of and routinely exercised at the FFC during his three years as a military police officer on NAS Pensacola; (4) the listing for the weight plates indicated "Abbi-Keys" was selling them "for my husband"; (5) he took screenshots of the listings he reviewed; (6) he learned from Brockway that Defendant's wife was named Abbigal-Keys Jones; and (7) in a verbal

Case No. 3:26-mj-1-HTC

statement, Defendant confessed to taking the equipment from the NOFF zone at the FFC and selling it on Facebook Marketplace.

In addition, the Government says it will introduce Defendant's written statement through Kirchheiner's testimony. The statement indicates that when Defendant was asked "if you were only taking old equipment, why does the post for a rower say 'brand new[,]'" he wrote "it said brand new because it was practically new." Doc. 30-1 at 16. Thus, Defendant explained why specific words appeared in the description section of the listings. This supports a finding that Defendant was using Facebook Marketplace listings to sell equipment he had taken from the FFC and the screenshots of the listings, which contain the "brand new" language, are authentic.[3]

The written statement also indicates Defendant removed a squat rack, Life Fitness cable machine, and old weight plates from the FFC's NOFF zone, all of which are shown in the photos of the listings. *Id.* Thus, Defendant was able to identify four of the five pieces of equipment described in the listings, even though Kirchheiner says he never showed Defendant the screenshots of the listings.[4] Lastly, Defendant wrote that he still had the Life Fitness cable machine and was willing to

---

[3] Consistent with Defendant's written statement, the listing for the rowing machine describes it as a "Brand new Concept 2 Rower in box." Doc. 30-1 at 13.
[4] Defendant's written statement did not reference the elliptical machine.

return it.  *Id.*  The screenshots of the listings describe the cable machine as a Life Fitness brand machine.

Based on the foregoing, Kirchheiner's proposed testimony, including his testimony regarding Defendant's verbal and written statements, is sufficient to make out a *prima facie* case that the screenshots are what the Government claims—Facebook Marketplace listings of equipment Defendant took from the FFC and tried to sell.  The proffered evidence explains how the Government obtained the screenshots of the listings.  *See United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011) (concluding detective's testimony was "competent evidence" to authenticate transcripts of instant messages he transferred to a Microsoft Word document when he "testified that he participated in the online chats and the transcripts were accurate copies of those conversations").  And it also adequately links Defendant to the listings through his own admissions and by connecting "Abbi-Keys" and the equipment shown in the listings to Defendant and his job.  *See United States v. Browne*, 834 F.3d 403, 415 (3d Cir. 2016) (concluding Facebook records were duly authenticated because "this [was] not a case where the records proponent has put forth tenuous evidence attributing to an individual social media or online activity that very well could have been conducted or fabricated by a third party")[5];

---

[5] Defendant relies on *Browne* but it does not support his argument.  The court in *Browne* concluded Facebook chat logs were not self-authenticating under Rule 902(11), but it found the chat logs were properly authenticated through circumstantial evidence linking the defendant to the chat logs.

*United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (holding circumstantial evidence supported conclusion emails were authentic and sent by defendant). Accordingly, the Court concludes the Government will be able to properly authenticate the screenshots of the Facebook Marketplace listings, provided that the necessary foundation is laid through the testimony of Kirchheiner.

**B.   Hearsay**

Defendant also argues even if the screenshots of the Facebook listings can be authenticated, they should be excluded as inadmissible hearsay. Hearsay is "an out-of-court statement offered 'to prove the truth of the matter asserted' and is generally inadmissible unless it falls within an exception." *United States v. Starr*, 159 F.4th 901, 908 (11th Cir. 2025) (citing Fed. R. Evid. 801(c)). For the reasons set forth below, the Court concludes the listings do not qualify as hearsay.

As an initial matter, and as the Government correctly notes, "[s]till frame pictures are not statements[.]" *See United States v. Clotaire*, 963 F.3d 1288, 1294-95 (11th Cir. 2020) ("ATM photos are not hearsay"); *United States v. Turner*, 934 F.3d 794, 798 (8th Cir. 2019) ("The photographs of Turner and the cash are images, not statements, so they too are not hearsay."). Thus, the photos of the exercise equipment within the listings are not hearsay.

---

Likewise, here, there is sufficient circumstantial evidence to link Defendant to the Facebook Marketplace listings.

Case No. 3:26-mj-1-HTC

As for the text within the listings, the Government argues it is not hearsay because it is not being offered to prove the truth of the matter asserted but, instead, for its effect on Kirchheiner.[6]  *See Starr*, 159 F.4th at 909 ("An out-of-court statement offered to show its effect on the listener isn't hearsay because it's not offered 'to prove the truth of the matter asserted.'") (citing Fed. R. Evid. 801(c)). An investigator may provide testimony explaining how information he learned from out-of-court statements affected the course of his investigation.  *See id.* (affirming district court's admission of testimony from agent "explaining how information he learned from people interviewed by law-enforcement officials—*i.e.*, from out-of-court statements—affected the course of his investigation").

The Government asserts Kirchheiner will testify the information he learned from the listings, including the text, prompted him to investigate the identity of "Abbi-Keys" and her husband, which he did by speaking with Brockway.  After Brockway relayed that Abbigal-Keys Jones was Defendant's wife, Kirchheiner confronted Defendant, who then confessed to taking the equipment.  Thus, the text associated with the listings is admissible to show its effect on Kirchheiner.  *See United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026) (concluding district

---

[6] Each listing includes a title identifying the equipment for sale, a price, and whether the item had been sold or discounted.  Doc. 30-1 at 1-14.  Some of the listings also include descriptions, such as indicating: (1) a potential purchaser of the squat rack "must pick up near base"; (2) the account is selling the bench press and weight plates "for my husband"; and (3) the rowing machine is "brand new."

court did not err when admitting body camera footage that included bystanders' statements because the statements were not admitted for their truth but to explain the behavior of police responding to a shooting).

In addition, the Government also argues the text on the listings is admissible under Fed. R. Evid. 801(d)(2)(E), which provides that statements offered against an opposing party are not hearsay when they are made by the party's coconspirator during and in furtherance of the conspiracy. Doc. 30 at 11 n.4. Although a conspiracy has not been charged, the Government believes Defendant's wife conspired with him to take the exercise equipment and sell it online for their personal benefit. The Court agrees the text is also admissible under Rule 801(d)(2)(E).

"In order for evidence to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) that the statement was made during the course and in furtherance of the conspiracy." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). The Government "need not show that a conspiracy was unlawful to introduce coconspirator statements. So long as those statements were made during and in furtherance of a joint venture that included an opposing party, the statements are admissible." *United States v. Holland*, 117 F.4th 1352, 1354 (11th Cir. 2024); *see also United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979) ("[I]t is

well-established that the crime of conspiracy need not be charged … in order to invoke the coconspirator exception to the hearsay rule to admit out-of-court statements.").

Here, the Court finds the evidence the Government has proffered is sufficient to show it is more likely than not Defendant's wife authored the text in the Facebook Marketplace listings to help Defendant sell the equipment he allegedly took from the FFC.  The account name that posted the listings, Abbi-Keys, is strikingly similar to the name of Defendant's wife, Abbigal-Keys Jones.  The description of the listing for the weight plates indicated the author was selling them "for my husband" which also indicates Mrs. Jones was the author.  *See* Fed. R. Evid. 801(d)(2) (noting the out-of-court statement "must be considered but does not by itself establish … the existence of the conspiracy or participation in it").  The extensive connections between the Defendant and the listings discussed above, including his admission that he was selling the equipment he took on Facebook Marketplace and his ability to explain the language used in listing, also support the conclusion that Defendant and his wife agreed to sell the equipment he removed from the FFC and the listings were created in furtherance of that effort.[7]  *See United States v. Smith*, 833 F.2d 213 (10th

---

[7] Of course, if Defendant himself authored the text in the listings, the statements would be admissible under Fed. R. Evid. 801(d)(2)(A) as the statement of an opposing party.  In addition, even if the author's identity cannot be ascertained with certainty, that does not preclude application of Rule 801(d)(2)(E) where, as here, the evidence shows the author was helping defendant dispose of the equipment.  *See United States v. Huskey*, 90 F.4th 651, 668 (4th Cir. 2024) (explaining Rule 801(d)(2)(E) does not require the offering party to identify the declarant by name and, instead, the

Case No. 3:26-mj-1-HTC

Cir. 1987) (finding recordings of defendant's wife's conversations regarding sale of computers stolen from defendant's workplace were admissible against defendant under Rule 801(d)(2)(E)). Furthermore, it does not matter whether Mrs. Jones knew the equipment was potentially stolen. *See Holland*, 117 F.4th at 1356 (holding "the word 'conspiracy' in Rule 801(d)(2)(E) means an arrangement to work together toward a shared goal," not necessarily "an agreement to do something unlawful"). Thus, the Court finds the text on the listings may also be admissible against Defendant under Fed. R. Evid. 801(d)(2)(E).

## C. Relevance

Lastly, Defendant argues the Facebook Marketplace posts are not relevant. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. To show Defendant violated 18 U.S.C. § 641, the Government must prove: (1) the property described in the information belonged to the United States; (2) the Defendant embezzled, stole, or knowingly converted the property to his own use or to someone else's use; and (3) the Defendant knowingly and willfully intended to deprive the owner of the use or benefit of the

---

offering party need only show that the unknown declarant was more likely than not a conspirator); *United States v. Benavides*, 470 F. App'x 782, 789 (11th Cir. 2012) (rejecting claim that district court erred by admitting notes under Rule 801(d)(2)(E) "without knowing the identity of the author or the circumstances surrounding the drafting" because a court "need not specifically identify the author if circumstantial evidence shows that the document's author had intimate involvement in the operation of the conspiracy").

Case No. 3:26-mj-1-HTC

money or property.  *See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases), O21.

The photos of the Facebook Marketplace listings satisfy the test for relevance because they make it more probable that Defendant stole or converted property of the United States to his own use, which are elements of the charged offense.  The photos: (1) corroborate Defendant's verbal and written statements to Kirchheiner that he took exercise equipment from the FFC's former NOFF zone and sold it on Facebook Marketplace, including by depicting the four kinds of equipment that were listed in his written statement; (2) corroborate his statements in an email he sent to Brockway, in which he admitted to taking exercise equipment from the FFC and selling it; and (3) tend to show the equipment was taken from the former NOFF zone, as Kirchheiner and other witnesses are expected to testify the type of equipment shown in the listings is used at the FFC and the backgrounds of some of the photos match the former NOFF zone.[8]  Thus, the Court finds the screenshots of the listings are relevant to the charged offense.[9]

---

[8] Defendant's motion complains the Government has failed to provide him with information regarding the equipment he allegedly stole, such as serial numbers and purchase invoices, and, thus, has not connected the equipment shown in the Facebook listings to any equipment missing from the FFC.  However, those complaints go to the weight of the evidence, rather than the threshold test for relevance, and can be explored on cross-examination, particularly since the Government intends to present evidence that Defendant confessed to selling the equipment he took on Facebook Marketplace.

[9] Defendant's motion references Fed. R. Evid. 403, which provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

Case No. 3:26-mj-1-HTC

## III.    Conclusion

The screenshots of the Facebook Marketplace listings are relevant and the Government has proffered evidence which suggests it will be able to authenticate the screenshots and that they are potentially admissible.  Thus, Defendant's motion in limine is denied.  *See Stewart v. Hooters of Am., Inc.*, 2007 WL 1752838, at *1 (M.D. Fla. June 18, 2007) ("A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds.").

Accordingly, it is ORDERED:

Defendant's motion in limine (Doc. 22) is DENIED to the extent that the Court will allow the Government to offer evidence to authenticate the Facebook Marketplace listings and if the Government can do so, consistent herewith, then the listings will be admitted.

DONE AND ORDERED this 23rd day of April, 2026.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

time, or needlessly presenting cumulative evidence."  Defendant claims the listings pose a "great risk of confusing the issues or creating undue prejudice," but he does not elaborate on those claims. Regardless, the Court finds the probative value of the listings is not substantially outweighed by a danger of confusing the issues or unfair prejudice.

Case No. 3:26-mj-1-HTC